UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TEMUJIN KENSU,

    Plaintiff,

v.                                                                               Case No. 12-11877

                                                                               Hon. Victoria A. Roberts

LLOYD RAPELJE, Warden, et al,

    Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**[DOC #152]**

**I.    INTRODUCTION**

Temujin Kensu ("Kensu") is a prisoner in the custody of the Michigan Department of Corrections ("MDOC").

Two issues are before the Court: (Count I) an Eighth Amendment violation for deliberate indifference to wheat and dairy intolerance; and (Count II) Retaliation under the First Amendment. These are the only causes of action remaining against these Defendants. Count III (Intentional Infliction of Emotional Distress) was dismissed upon stipulation of the parties. *Dkt. No.* 85. Count IV (Discrimination under the Americans with Disabilities Act) and Count V (Discrimination under the Rehabilitation Act) are not alleged against these Defendants.

Kensu has another suit pending. The *Buskirk* case alleges deliberate indifference to serious medical needs concerning his spine and joints. *Kensu v. Buskirk*, et al, No. 13-10279. The two lawsuits involve some of the same defendants.

1

In a previous order, the Court declined to consolidate the two cases because they do not involve a common question of law or fact, and because consolidation could be prejudicial to Defendants.  *Dkt. No.* 144.

The matter is before the Court on a Motion for Summary Judgment filed by Defendants Gina Couturier, P.A., Jeffrey Bomber, D.O., Ramesh Kilaru, M.D., and Joshua Buskirk, P.A.

The Court **GRANTS** their Motion.

## II.     BACKGROUND

This lawsuit involves events that took place while Kensu was confined at Saginaw Correctional Facility and the Thumb Correctional Facility.  Kensu currently resides at Oaks Correctional Facility.

Joshua Buskirk, P.A.("Buskirk") performed two chart reviews of Kensu's medical record before meeting with him in person.  *Affidavit of Joshua Buskirk* at p. 2. He later examined him in person on January 27, 2010.  Kensu declined to go to the chronic care clinic and demanded to see several specialists.  *Id.*  Buskirk explained he would have to examine Kensu to determine the need for a specialist, but Kensu refused.  *Id.*  On February 22, 2010, Buskirk saw Kensu at a clinic visit; no gastrointestinal issues were reported.  *Id.*  Kensu reported having increased phlegm when he consumes dairy products, but Buskirk noted this does not constitute a milk allergy.  *Id.* at 3.

On May 9, 2011, Kensu reported a "food insensitivity" to gluten and a "milk insensitivity." *Id.* at 4.  He requested dietary supplements, and a snack bag with non-wheat and non-dairy snacks to supplement his diet.  *Id.*  Kensu failed to show for his

visit with a MDOC dietitian about the snack bag. *Id.* On June 7, 2011, dietician Meaghan Walters, RD concluded that Kensu's nutritional needs were being met and he did not require a snack bag. *Id.* at 5.

On June 9, 2011, Buskirk discussed whether Kensu might have celiac disease with Dr. Borgerding, who directed Buskirk to order a test. *Id.* Celiac disease is an immune reaction to eating gluten, a protein found in wheat, barley and rye. Mayo Clinic definition of Celiac Disease, http*://www.mayoclinic.org/diseases-conditions/ celiac-disease/basics/definition/con-20030410* (last visited, Aug. 30, 2015). Test results confirmed this disease was not present. *Id.* at 6. Kensu was also told he did not have an iron deficiency, but that he could purchase vitamins from the prison store.

Jeffrey Bomber, D.O., ("Bomber") saw Kensu on multiple occasions. *Affidavit of Jeffrey Bomber at 2; see also, Affidavit of Joshua Buskirk* at p. 4 and 6 (noting Bomber and Buskirk consulted with each other regarding Kensu's medical care). At one visit, Bomber suggested that Kensu avoid gluten if he found that made him feel better. *Affidavit of Jeffrey Bomber*, at 2. After Bomber made that suggestion, Jeffrey Stieve, M.D., advised Bomber that it was MDOC policy to provide a gluten-free diet only to prisoners with medically significant issues with gluten, such as confirmed celiac disease. *Id.*

Gina Couturier, P.A., saw Kensu at a clinic visit on March 2, 2012. Kensu told her he had a gluten sensitivity and complained of constipation. *Affidavit of Gina Couturier*, at p. 2. Couturier saw Kensu multiple times before he was transferred to Gus Harrison Correctional Facility. *Id.* at 2-3. Couturier says because Kensu did not have celiac disease, he did not qualify for a gluten-free diet under MDOC policy. *Id.* at 3.

3

Couturier agreed with the assessment that Kensu did not require a special diet. *Id.*

Ramesh Kilaru, M.D., saw Kensu on May 8, 2012 during a clinic visit and on other occasions. *Affidavit of Ramesh Kilaru*, at p. 2. Kensu told him he had gluten enteropathy (commonly known as celiac disease), and requested medications. *Id.* Kilaru ordered stool testing. Again, Kensu requested a gluten-free diet and complained of constipation. *Id* at 2-3. Kilaru noted that Kensu buys food with gluten. *Id.* Kilaru says because Kensu did not have celiac disease, he did not have authority to order a gluten-free diet for him. *Id.* at 5.

Defendants submitted the expert report of Thomas Graves, M.D., a family medicine physician. According to Dr. Graves, Defendants ". . . appropriately determined that neither a therapeutic diet nor an order for supplemental nutrition (such as a snack bag or nutritional drink) was medically indicated." *Affidavit and Expert Report of Thomas Graves, M.D.* at 3.

### III. SUMMARY JUDGMENT

Summary judgment must be granted "if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on governing substantive law. *Id.* at 248. A dispute about a material fact is genuine if on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and

. . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. Summary judgment is appropriate if the party with the burden of proof at trial fails to establish the existence of an element that is essential to that party's case. *Muncie Power Products, Inc. v. United Technologies Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. Conclusory allegations are insufficient to create a genuine issue of material fact. *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). "The Court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3). The Court's function at this stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249.

**IV.     DISCUSSION**

    **A.     42 U.S.C. §1983**

To prevail on a 42 U.S.C. §1983 claim, Kensu must demonstrate there is a genuine issue of material fact on two elements: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was caused by someone acting under color of state law. *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005).

Kensu claims an Eighth Amendment violation; he says Defendants were deliberately indifferent and did not treat his severe wheat and dairy intolerance, denied him access to a proper and nutritious diet, denied access to supplementation nutrition, and refused to accommodate or compensate for food allergies.

In response to Defendants' motion for summary judgment, Kensu broadens his claim by asserting: (1) he has heart disease and was in the cardiopulmonary clinic but did not receive treatment; (2) he was not treated at the gastro clinic; (3) he was not treated for repeated lung infections; (4) all of his inhalers were cancelled; (5) various medications were cancelled. Kensu's complaint does not contain allegations regarding these other medical treatment issues.

In general, a plaintiff may not raise a new legal claim for the first time in response to a motion for summary judgment. *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005). The Court declines to liberally construe Kensu's complaint so as to encompass claims for inadequate medical care for heart disease, lung infections, or cancelled medications. These new allegations of other medical needs are not considered.

There is no dispute Defendants acted under color of state law during the relevant time period. The question is whether they deprived Kensu of a right secured by federal law. Kensu's allegations against Defendants fail to allege a constitutional violation; he cannot show Defendants' failure to provide him with alternative food sources amounted to cruel and unusual punishment.

"The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's

serious medical needs. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). The "deliberate indifference" standard applies to a prisoner's challenge to medical treatment. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). The Eighth Amendment imposes a duty on prison officials to ensure inmates receive "adequate food, clothing, shelter, and medical care" as well as reasonable measures to guarantee safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

### 1. Objective Component

A deliberate indifference claim under the Eighth Amendment has both objective and subjective components. *Farmer v. Brennan*, 511 U.S. at 834. The objective component requires the existence of a sufficiently serious medical need, such as being incarcerated under conditions that pose a substantial risk of serious harm. *Id*. "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citation omitted).

Kensu alleges he was not provided with treatment from the gastro clinic and that Defendants cancelled bowel medications. In support, Kensu references his deposition transcript, but Kensu failed to attach the relevant portions of the deposition for the Court to review.

Defendants say Kensu fails to allege a sufficiently serious medical need; while Kensu claims he has a gluten and dairy intolerance, these are not conditions that require treatment and they are not medical issues obvious to a lay person. Defendants are correct.

Importantly, Kensu has not been diagnosed with a gluten intolerance or a dairy intolerance. The Court finds Kensu does not allege a sufficiently serious medical need. He fails to meet the required objective component of an Eighth Amendment claim for deliberate indifference.

### 2. Subjective Component

Kensu fails to satisfy the subjective component as well.

The subjective component requires a showing that the defendant had "a sufficiently culpable state of mind. . ." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). Deliberate indifference requires more than "mere negligence" but can be satisfied "...by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. at 835. A prison official cannot be liable for denying an inmate humane conditions of confinement "...unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837

None of the examples provided by Kensu shows that Defendants disregarded an excessive risk to his health or safety.

The record shows Buskirk examined Kensu and took his complaints seriously enough to order a test for celiac disease. Bomber also listened to Kensu and, although he could not authorize a special diet due to MDOC policy, he did tell Kensu that he could avoid gluten if it made him feel better. Couturier agreed that Kensu did not require a special diet. Kilaru saw Kensu and ordered testing to address his medical

8

concerns.

Kensu was seen regularly by medical staff who ordered testing in response to his complaints and consulted with each other regarding his care. Although Kensu disagrees with some of the treatment he received and decisions that were made regarding his health, none of his allegations rises to the level of "deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A difference of opinion regarding treatment or need for surgery is insufficient to state a claim under the Eighth Amendment. *Chapman v. Parke*, 1991 WL 203080, at *2 (6th Cir. Oct. 4, 1991).

Because Kensu fails to satisfy this subjective as well as the objective component of his Eighth Amendment claim, Defendants are entitled to summary judgment on Count I.

    **B.**    **Retaliation**

Kensu says Defendants retaliated against him in violation of the First Amendment because he filed a grievance against them. He says they cancelled his medications and denied him a supplemented diet. Kensu also says: (1) Kilaru said he was not going to help Kensu get his diet; (2) Buskirk cancelled his Vitamin D because a grievance was filed; (3) Bomber failed to provide much care; (4) Couturier failed to provide Kensu with his diet requirements.

To succeed on a First Amendment retaliation claim, three elements must be established: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's

protected conduct." *Cox v. Jackson*, 579 F. Supp. 2d 831, 848 (E.D. Mich. 2008), citing, *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc) (plurality op.). However, if the "defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, at 399.

Although Kensu alleges Defendants retaliated against him because he filed grievances, Kensu cannot show Defendants' actions would have been different in the absence of the protected activity. The evidence demonstrates that Kensu received consistent medical attention and the Defendants ran tests, consulted with each other, and agreed on the conclusion that Kensu did not have a medical condition that required a special diet. While Kensu may disagree with the decisions Defendants made, he fails to make more than conclusory allegations.

Defendants are entitled to summary judgment on Count II.

### C. Injunctive Relief

Defendants say Kensu's request for injunctive and declaratory relief are moot because he has since transferred to another facility.

A prisoner's claim for declaratory and injunctive relief against certain prison officials becomes moot when the prisoner is transferred from the prison of which he complained to a different facility. *Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003) To the extent that Henderson asks for injunctive relief against officials at Saginaw Correctional Facility and Thumb Correctional Facility, his claim is moot.

Kensu says his physical conditions have not changed and he is entitled to injunctive relief so that he will receive proper treatment at his current location. In his

Second Amended Complaint, Kensu requested injunctive relief providing him with nutritional and dietary accommodation as well as access to a Michigan Licensed Dietician and a Gastro-Intestinal Clinic.

Even if Kensu's request for an injunction is not moot, it would still be unwarranted under the circumstances. Kensu does not seek injunctive relief through a motion for a temporary restraining order or a preliminary injunction. Kensu's request is for a remedy to be determined after liability has been established. Additionally, the factors a court considers in determining whether injunctive relief is warranted weigh against it.

When reviewing a request for injunctive relief, the court balances: (1) whether the person requesting relief has shown a substantial likelihood or probability of success on the merits; (2) whether irreparable injury would be suffered without the injunction; (3) if the preliminary injunction will cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005). The plaintiff bears the burden to persuade the court that the factors weigh in favor of granting a preliminary injunction. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 432, 441 (1974).

Neither party addresses these four factors. Kensu's request for injunctive relief is **DENIED**.

## V. CONCLUSION

Defendants' Motion for Summary Judgment is **GRANTED**. Defendants Gina Couturier, P.A., Jeffrey Bomber, D.O., Ramesh Kilaru, M.D., and Joshua Buskirk, P.A. are **DISMISSED**.

**IT IS ORDERED**.

                                                s/Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: September 1, 2015

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 1, 2015.<br><br>s/Carol A. Pinegar<br>Deputy Clerk |